## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01546-STV

MCI COMMUNICATIONS SERVICES, INC. and
MCIMETRO ACCESS TRANSMISSION SERVICES CORP.,

      Plaintiffs,

v.

B&F COMPANY INC.,

      Defendant.
_____

## ORDER
_____

Magistrate Judge Scott T. Varholak

      This matter comes before the Court on Defendant's Motion for Partial Summary Judgment [#35] (the "Motion") and Defendant's Request for Judicial Notice in Support of the Motion [#38] (the "Request for Judicial Notice").  The parties have all consented to have a United States magistrate judge conduct all proceedings in this action and to order the entry of a final judgment.  [#18, 19]  This Court has carefully considered the Motion and the Request for Judicial Notice and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion and/or Request for Judicial Notice.  For the following reasons, the Request for Judicial Notice is **DENIED WITHOUT PREJUDICE** and the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.     UNDISPUTED FACTS[1]

This case arises out of an incident in which Defendant B&F Company, Inc. ("B&F" or "Defendant") damaged fiber-optic cable (the "MCI Cable") owned and operated by Plaintiffs MCI Communications Services, Inc. and MCImetro Access Transmission Services Corp. (collectively, "MCI" or "Plaintiffs").  [#1, ¶¶ 1, 2, 9; #44, MCI1]  The incident occurred on May 31, 2017 while Defendant was performing a directional bore to install fiber-optic cable for Comcast in a public right-of-way owned by the City of Centennial (the "City").  [#44, MCI1]  Prior to May 31, 2017, Defendant provided notice of excavation to Colorado 811,[2] but the notice Defendant provided did not include the area where Defendant severed the MCI Cable.[3]  [*Id.* at MCIF3, MCIF5]  The public right-of-way where the incident occurred was zoned "Urban Center District" by the City with "permitted use" for offices, mixed-use, services, and commercial retail, and thus was not zoned residential.[4]  [*Id.* at BFCF3]  The area where the incident occurred thus is "commercial in nature, and is not residential in nature."  [*Id.* at BFCF4]

---

[1] The undisputed facts are drawn from the Separate Statement of Undisputed Material Facts (the "Statement of Facts") filed with the briefing on the Motion [#44].  The Court refers to the sequentially numbered facts set forth by Defendant in the Statement of Facts as "BFCF#" and refers to the sequentially numbered facts set forth by Plaintiffs as "MCIF#."

[2] Pursuant to Colorado Revised Statute § 9-1.5-103(3), an excavator must provide notice, including "[t]he specific location, starting date, and description of the intended excavation activity," at least two business days prior to the excavation.  "Colorado 811 is the notification center formed pursuant to § 9-1.5-105 to receive those notices."  [#42 at 2 n.2; *see generally* Colorado 811, About Us Page, https://colorado811.org/about-us-2/ (last visited July 13, 2020)]

[3] The parties dispute whether, prior to May 31, 2017, MCI had marked the location of the MCI Cable in the area Defendant had described in the notice it provided to Colorado 311. [#44, MCIF4]  This disputed fact, however, is not material to the resolution of the instant Motion.

[4] Defendant's Request for Judicial Notice requests that the Court take judicial notice that the right-of-way (1) was zoned as "Urban Center," (2) had permitted uses of offices,

2

MCI lost the ability to use the severed MCI Cable for the approximately nine hours it took to repair.  [*Id.* at MCIF6, MCIF17]  MCI has built dedicated, spare restoration capacity into its network for use during outages, such as that caused by the severance of the MCI Cable on May 31, 2017.  [*Id.* at MCIF9]  On May 31, 2017, MCI used this dedicated, spare restoration capacity on other cables in its own network to reroute and restore a portion of the telecommunications traffic that was being carried on the MCI Cable at the time it was severed.  [*Id.* at MCIF13]  MCI estimates a cost of $24,837,120 for the equipment necessary to reroute the capacity that was rerouted from the severed MCI Cable to MCI's dedicated, spare restoration capacity.  [*Id.* at MCIF14]  MCI, however, was not able to reroute and restore service for three of the 28 transport systems impacted by the severed MCI Cable.  [*Id.* at MCIF15, MCIF16]  Approximately 769 MCI customers whose circuits were being carried by these three transport systems thus had their service from MCI completely interrupted for the approximately nine hours it took to repair the MCI Cable.[5]  [*Id.* at MCIF16, MCIF17, MCIF18]  MCI did not obtain substitute capacity from any other carrier as a result of the severance of the MCI Cable.  [*Id.* at BFCF5, BFCF6]

---

mixed-use, services, and commercial retail, and (3) was commercial in nature, and not residential in nature.  [#38]  Plaintiffs do not dispute any of these facts in their response to the Statement of Facts, but did not respond to the Request for Judicial Notice.  [*See* #44, BFCF3, BFCF4]  Because these facts are undisputed for purposes of the instant Motion, the Court finds it unnecessary to consider whether the Court may properly take judicial notice of these facts.  *See* Fed. R. of Evid. 201 (stating that Court may take judicial notice of a fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").  Accordingly, the Request for Judicial Notice is DENIED WITHOUT PREJUDICE.

[5] Although Defendant contends in its Motion that MCI "did not *actually* lose any transmission capacity as a result of its cable being severed" [#35 at 11 (emphasis in original); *see also* #44, MCIF6], Defendant does not dispute MCI's proposed statements of fact regarding their loss of capacity but instead responds only that "nothing in [the

On May 30, 2019, Plaintiffs filed the instant lawsuit asserting claims against Defendant for trespass, negligence, and statutory liability for violation of the Colorado One Call Law, Colo. Rev. Stat. §§ 9-1.5-101, *et seq.* [#1]  Plaintiffs seek damages totaling $212,867.98, consisting of (1) repair costs of $15,792.31 and (2) $197,075.67 for loss of use of the MCI Cable.  [#44, MCIF7]  Plaintiffs based their loss of use damages "on the cost of obtaining comparable substitute capacity from another carrier equal to the capacity of the transport systems MCI was able to reroute to dedicated, spare restoration capacity in its own network, *i.e.*, the rental value of substitute property."  [*Id.* at MCIF8]

On January 14, 2020, Defendant filed the instant Motion arguing (1) Plaintiffs' loss of use damages are barred by the Colorado Construction Defect Action Reform Act ("CDARA"), Colo. Rev. Stat. §§ 13-20-801, *et seq.* and (2) Plaintiffs' claim for statutory damages under the One Call Law is barred by the applicable statute of limitations.  [#35]  Plaintiffs filed a response in opposition [#42], and Defendant filed a reply [#43].

## II.   LEGAL STANDARD

### A.   Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, a party may move for summary judgment or partial summary judgment by "identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co.*,

---

statements of fact] is a basis for measuring actual damages as required by CDARA [*see* #44, MCIF15, MCIF16, MCIF17, MCIF18].

4

41 F.3d 567, 569 (10th Cir. 1994).  The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact, which the movant may do "simply by pointing out to the court a lack of evidence . . . on an essential element of the nonmovant's claim" when the movant does not bear the burden of persuasion at trial.  *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir.1998).  If the movant carries this initial burden, the burden then shifts to the nonmovant "to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial."  *Id.* at 671 (quotation omitted).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'"  *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury.  *See Anderson*, 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).  Evidence, including testimony, offered in support of or in opposition to a motion for summary judgment must be based on more than mere speculation, conjecture, or surmise.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable juror could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986) (quoting *First Nat'l. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)).  In reviewing a motion for summary judgment, the Court "view[s] the evidence and draw[s] reasonable inferences therefrom in the light most favorable to the non-moving party."  *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).

### B.    Statutory Interpretation

"Statutory interpretation is a matter of law appropriate for resolution on summary judgment."  *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011).  The Court "appl[ies] Colorado law in determining how best to interpret a Colorado statute in a case [like that here] resting on diversity jurisdiction."  *Allen v. United Servs. Auto. Ass'n*, 907 F.3d 1230, 1237 (10th Cir. 2018); *see also Par. Oil Co. v. Dillon Cos.*, 523 F.3d 1244, 1248 (10th Cir. 2008) ("As we are sitting in diversity and construing a Colorado statute, we must give it the meaning it would have in the Colorado courts.").  "Under Colorado law, the 'primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent.'"  *Allen*, 907 F.3d at 1237 (quoting *Lewis v. Taylor*, 375 P.3d 1205, 1209 (Colo. 2016)).  "To do so, [the Court] look[s] to the plain meaning of the statutory language and consider[s] it within the context of the statute as a whole."  *Lewis*, 375 P.3d at 1209 (citing *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1088 (Colo. 2011)).  If the statutory language is clear, the Court applies it as such, without "resort[ing] to other rules of statutory construction."  *People v. Triantos*, 55 P.3d 131, 134 (Colo. 2002).  However, "if the statutory language has more than one reasonable meaning, and is therefore ambiguous, [the Court] may look to interpretive aids to construction to resolve

the ambiguity and determine which of the reasonable interpretations is appropriate."[6] *Lewis*, 375 P.3d at 1209.  "In evaluating whether a statute is ambiguous, [the Court] do[es] not read its words or phrases in isolation, but instead read[s] them in context and in a manner that gives effect to the statute as a whole."  *Id.*

## III.   ANALYSIS

The Motion argues that Defendant is entitled to summary judgment (1) on Plaintiffs' request for loss of use damages, because such damages are barred by CDARA and (2) on Plaintiffs' claim for statutory damages under the One Call Law, because that claim purportedly seeks a civil penalty and thus is subject to a one-year statute of limitations. [#35]  The Court addresses each argument in turn.

### A.   Whether CDARA Applies to Limit the Available Damages

Pursuant to CDARA, absent circumstances not present here, "[a] construction professional otherwise liable shall not be liable for more than actual damages."  Colo. Rev. Stat. § 13-20-806(1).  CDARA defines "construction professional" as "an architect, contractor, subcontractor, developer, builder, builder vendor, engineer, or inspector performing or furnishing the design, supervision, inspection, construction, or observation of the construction of any improvement to real property."  Colo. Rev. Stat. § 13-20-802.5(4).  The statute further defines "actual damages" as follows:

> the fair market value of the real property without the alleged construction defect, the replacement cost of the real property, or the reasonable cost to repair the alleged construction defect, whichever is less, together with relocation costs, and, with respect to residential property, other direct economic costs related to loss of use, if any, interest as provided by law,

---

[6] In addition to the rules of statutory construction, such interpretive aids include "legislative history, the consequences of a given construction, and the end to be achieved by the statute."  *Klinger v. Adams Cty. Sch. Dist. No. 50*, 130 P.3d 1027, 1031 (Colo. 2006).

and such costs of suit and reasonable attorney fees as may be awardable pursuant to contract or applicable law."

Colo. Rev. Stat. § 13-20-802.5(2).  The Court understands the parties to agree that, if CDARA applies, Plaintiffs may not recover loss of use damages, but, if CDARA does not apply, Plaintiffs may seek loss of use damages at trial.[7]

Plaintiffs offer two main arguments for why CDARA does not apply to their claims against Defendant.  [#42 at 5-10]  First, Plaintiffs argue that Defendant has not offered sufficient evidence to demonstrate that it was acting as a "construction professional" as that term is defined under CDARA at the time of the incident.  [*Id.* at 7]  Second, Plaintiffs argue that CDARA does not apply because the incident was caused by Defendant's negligence rather than by a defect in the fiber-optic cable it was installing.  [*Id.* at 8-10]  The Court considers each below.

### 1.    Whether an "Improvement to Real Property" Was Involved

As noted above, to be considered a "construction professional" for purposes of CDARA, the contractor must have been engaged in "the construction of an[] improvement to real property."  Colo. Rev. Stat. § 13-20-802.5(4).  Plaintiffs argue that Defendant has not satisfied its burden of producing evidence to demonstrate that the installation of the fiber-optic cable for Comcast constituted an "improvement to real property."  [#42 at 7]

---

[7] Although Plaintiffs argue in their response to the Motion that the rental value of substitute capacity is a proper measure of loss of use damages under Colorado law [#42 at 10-15], Plaintiffs do not argue that loss of use damages are available under CDARA where, as here, the alleged damage occurred on commercial—not residential—property.  Indeed, Plaintiffs' response does not even mention CDARA's definition of "actual damages" or the residential property distinction contained therein.  *See* Colo. Rev. Stat. § 13-20-802.5(2). Similarly, all of Defendants' arguments for precluding Plaintiffs from obtaining loss of use damages are premised upon CDARA and Defendant does not address the non-CDARA authority cited by Plaintiffs for the proposition that the rental value of substitute capacity is a proper measure of loss of use damages under Colorado law, even where no substitute capacity was actually rented.  [*See* #43]

Because CDARA does not provide a definition for "improvement to real property," *see* Colo. Rev. Stat. § 13-20-802.5, the Court looks to the plain and ordinary meaning of the phrase. *See Mendoza v. Pioneer Gen. Ins. Co.*, 365 P.3d 371, 376 (Colo. App. 2014) ("[W]here, as here, the statute does not define a term, the word at issue is a term of common usage, and people of ordinary intelligence need not guess at its meaning, we may refer to dictionary definitions in determining the plain and ordinary meaning of the word."). Here, both parties agree that the Court should interpret "improvement to real property" to mean "[a]n addition to real property, whether permanent or not; esp[ecially] one that increases its value or utility or that enhances its appearance." [#42 at 7 (quoting *Barron v. Kerr-McGee Rocky Mountain Corp.*, 181 P.3d 348, 350 (Colo. App. 2007) (quoting Black's Law Dictionary 773 (8th ed. 2004))); #43 at 4 (same)]

Plaintiffs argue that Defendant "has offered no evidence that the cable it was installing for Comcast increased the value or utility, or enhanced the appearance, of the public right-of-way." [#42 at 7] The Court disagrees. Plaintiffs concede that Defendant was performing a directional bore to install fiber-optic cable for Comcast at the time of the incident [#44, MCI1], and the Court finds this undisputed fact alone sufficient to demonstrate that Defendant was engaged in activity—*i.e.*, the installation of fiber-optic cable—that would increase the utility of the public right-of-way. Plaintiffs offer no explanation for why the installation of fiber-optic cable for a telecommunications company would not increase the utility of the property and the Court is aware of none.

Accordingly, the Court finds that Defendant has offered sufficient evidence to demonstrate that it was acting as a "construction professional" within the meaning of CDARA at the time of the incident.

## 2.    Causation

Plaintiffs next argue that CDARA does not apply to their claims against Defendant, because the injury at issue was caused by Defendant's negligence and not by a defect in the fiber-optic cable—*i.e.*, the improvement to real property.  [#42 at 5-6, 8-10]  CDARA defines "action" to include "a civil action or an arbitration proceeding for damages, indemnity, or contribution brought against a construction professional to assert a claim, counterclaim, cross-claim, or third party claim for damages or loss to, or the loss of use of, real or personal property or personal injury caused by a defect in the design or construction of an improvement to real property."  Colo. Rev. Stat. § 13-20-802.5(1).  Based upon that language, Plaintiffs argue that CDARA only applies where the plaintiff asserts claims based upon "a defect in the improvement itself which, in turn, causes the damage to the other property."  [#42 at 9]

Two Colorado Court of Appeals decisions have considered analogous arguments in the context of interpreting substantially similar language found in the statute of limitations applicable to actions brought against construction professionals.[8]  In *Irwin v.*

---

[8] With exceptions not applicable here, Colorado Revised Statute § 13-80-104(1)(a), (c) provides that "all actions against any architect, contractor, builder or builder vendor, engineer, or inspector performing or furnishing the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property shall be brought within [two years]" and that "[s]uch actions shall include any and all actions in tort, contract, indemnity, or contribution, or other actions for the recovery of damages for . . . [a]ny deficiency in the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property."  Neither party argues that the "caused by a defect in the design or construction of an improvement to real property" language utilized in Section 13-20-802.5(1) should be interpreted differently from the "damages for . . . [a]ny deficiency in the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property" utilized in Section 13-80-104(c) and both parties rely upon cases interpreting Section 13-80-104(c)—and its predecessor Colo. Rev. Stat. § 13-80-127, which utilized the same relevant language—to support their offered interpretations of Section 13-20-

*Elam Construction, Inc.*, the plaintiffs claimed that their home was damaged as a result of the defendant's negligent construction activities while improving and widening an adjacent roadway.  793 P.2d 609, 609-10 (Colo. App. 1990).  More specifically, the plaintiffs alleged that vibrations caused by the defendant's use of heavy equipment on the adjacent roadway had caused the home's walls, chimney, and basement to crack.  *Id.* at 609.  The *Irwin* court concluded that the plaintiffs' claims were not subject to the two-year statute of limitations applicable to claims seeking damages for "[a]ny deficiency in the design, planning, supervision, inspection, construction, or observation of construction of *any improvement* to real property."  *Id.* at 610-11 (emphasis in original) (quoting Colo. Rev. Stat. § 13-80-127).  According to the *Irwin* court, the statute's "repeated references to 'a defect in the improvement' or 'deficiency . . . of . . . improvement to real property'" signified that it "was intended to apply only to negligence in planning, design, construction, supervision, or inspection that results in a defect in an improvement to real property that, in turn, causes injury to a claimant."  *Id.* at 611.  Put another way, the court concluded that the statute "was intended to limit actions against building professionals only for claims of injury arising from defects in the improvement they create, rather than to supplant the applicability of the general limitation statute for all injuries caused by their negligent conduct."  *Id.*

In *Sharp Brothers Contracting Company v. Westvaco Corporation* ("*Sharp Bros.*"), the plaintiffs sued various defendants in connection with an explosion and fire that allegedly resulted from the defendants' removal of the tank lining of a carbon storage tank

---

802.5(1).  [See #42 at 5-6, 8-10; #43 at 3-9]  The Colorado Supreme Court also has observed that "the term 'defect' in section 13–80–127 is used synonymously with 'deficiency.'"  *Homestake Enters., Inc. v. Oliver*, 817 P.2d 979, 983 n.10 (Colo. 1991).

using a highly flammable substance.  817 P.2d 547, 549 (Colo. App. 1991).  The plaintiffs argued that their claims were not applicable to Section 13-80-127's two-year statute of limitations, because they "d[id] not arise out of a defect in an improvement to real property" but instead were "caused by the negligent conduct of [the] defendants."  *Id.*  The *Sharp Bros.* court, however, concluded that the statutory language "is not limited only to claims resulting from a 'defect in the improvement'" but rather "also applies to 'any and all actions' that result from a 'deficiency' in the design or construction process, including such a deficiency in 'supervision' of those processes."  *Id.* at 550.  The Court thus found that the statute supported a "broad interpretation" and declined to follow *Irwin* to the extent it "c[ould] be read to interpret the statute more restrictively."  *Id.*  Based upon this interpretation, the *Sharp Bros.* court found that Section 13-80-127 applied, because "the resulting injury . . . was directly related to a deficiency in the construction of an improvement to the real property."  *Id.* at 551.

In *Homestake Enterprises, Inc. v. Oliver* ("*Homestake*"), the Colorado Supreme Court acknowledged the tension between these two lower court decisions.  817 P.2d 979, 981 (Colo. 1991).  In *Homestake*, the plaintiff sued a subcontractor responsible for the installation of a sprinkler system and landscaping at a hospital for the injuries she sustained from slipping and falling on an icy sidewalk at the hospital.  *Id.* at 980.  The plaintiff contended that the subcontractor "negligently operated or caused the sprinkling system to be operated during freezing temperatures, which caused ice to form on the . . . sidewalk where it knew, or should have known, that pedestrians such as the [p]laintiff would be walking."  *Id.*  The subcontractor appealed from a decision of the Colorado Court of Appeals, which had relied upon *Irwin* to find that the plaintiff's claims were not subject

12

to Section 13-80-127's two-year statute of limitations, because that statute "applied only to negligence in planning, design, construction, supervision, or inspection that results in a *defect* in an improvement to real property that, in turn, causes injury to a claimant, and [the plaintiff] had alleged only that [the subcontractor's] employees were negligent and not that any of [the subcontractor's] improvements to real property were defective." *Id.* (emphasis in original) (quotation omitted).

The Colorado Supreme Court reversed the lower court's application of *Irwin*. Although the *Homestake* court acknowledged that statutes, like Section 13-80-127, "in derogation of the common law must be strictly construed to restrict its provisions to the clear intent of the legislature," the court concluded based upon the language and legislative history of the statute that "the legislature intended that section 13–80–127 provide comprehensive coverage to builders, contractors, and other construction-industry professionals." *Id.* at 982 (quotation omitted); *see also id.* at 983 ("[A]s the court of appeals recognized in [*Sharp Bros.*], the inclusive language used in the statute supports a comprehensive interpretation."). Based upon its conclusion that the legislature intended to provide comprehensive coverage to construction professionals, the *Homestake* court provided the following critique of *Irwin*:

> As the court of appeals recognized in *Irwin*, section 13–80–127(1)(b) suggests that only a defect in an improvement to real property may give rise to a claim for relief limited by the statute, since it states that a claim for relief "arises" when the "damaged party discovers . . . [a] defect in the improvement [to real property] which ultimately causes the injury." We believe, however, that the legislature intended that section 13–80–127(1)(c)(I) define "defect" to include a wide range of acts or events: that section states that a claim for relief limited by the statute "shall include any and all actions in tort . . . for any deficiency in the design, planning, supervision, inspection, construction, or observation of construction of any improvement to real property." Our construction of "defect" is consistent with the legislature's intent to enact a statute of limitations to protect

contractors and other professionals in the construction business from stale claims.

*Id.* at 983 (citation and footnote omitted).  The *Homestake* court thus concluded that the subcontractor's "alleged negligence in operating the sprinkler system in freezing temperatures was within the scope of section 13–80–127, because it was a 'deficiency in the design, planning, supervision, . . . construction, or observation of construction' of an improvement to real property."  *Id.* at 984.

Thus, although the *Homestake* court did not directly resolve the tension between the *Irwin* court's and the *Sharp Bros.* court's interpretation of Section 13-80-127, it overruled a lower court decision that had expressly relied upon the *Irwin* decision and adopted a "comprehensive" interpretation of the statute more in line with the *Sharp Bros.* court's interpretation.  The Court thus disagrees with Plaintiffs' contention that *Homestake* "discussed *Irwin* at length and reiterated that CDARA was not intended to apply to all activities of contractors in connection with the construction of improvements to real property," but instead reaffirmed that "there must be a defect in the improvement itself which, in turn, causes the damage to the other property."[9]  [#42 at 9]  Contrary to Plaintiff's

---

[9] Plaintiff's contention is more aligned with the concurring opinion in *Homestake*, which opined that *Irwin* was correctly decided and emphasized that "[t]he statutory language plainly contemplates a connection between the injury for which damages are sought and a defect in the improvement being constructed."   *Homestake*, 817 P.2d at 984-85.  Although the concurrence attempted to square its reasoning with the majority opinion, it acknowledged a tension with the majority's conclusion that the statute provided comprehensive coverage to construction professionals and, notably, was only joined by two of the seven justices.  *Id.*  Although the injury at issue in *Homestake* involved the negligent operation of the improvement to real property—*i.e.*, the sprinkler system— whereas here the injury was caused by negligence during the construction of the improvement to real property, the Court does not find this distinction persuasive given the inclusive language used in the statute and the legislature's intent to provide comprehensive coverage to construction professionals.

contention, even though the plaintiff in *Homestake* had not alleged any defect "in the [sprinkler system] itself," the court found that the statute applied.[10]

The Court finds the *Homestake* court's rationale for a "comprehensive interpretation" of Section 13-80-127 equally applicable to the interpretation of Section 13-20-802.5(1).   It is undisputed that the allegedly negligent excavation occurred in furtherance of the construction of the installation of the fiber-optic cable for Comcast—*i.e.*, the improvement to real property.   The Court thus concludes that Defendant's allegedly negligent excavation was within the scope of 13-20-802.5(1), because it was a "defect in the . . . construction of an improvement to real property."   *See Maryland Cas. Co. v. Formwork Servs., Inc.*, 812 F. Supp. 1127, 1130, 1131 (D. Colo. 1993) (applying "the broad construction of § 13–80–104 mandated by [*Homestake*]" to find that the statute applied where injury was caused by an accident on the construction site, "not because of a defect in the building" being constructed).

Accordingly, the Court finds that Plaintiffs' claims are governed by CDARA and thus that Plaintiffs are not entitled to recover loss of use damages.   Defendant's Motion is GRANTED to the extent it seeks summary judgment on Plaintiff's request for loss of use damages.

### B.    One Call Law Claim

Plaintiffs' Third Claim for Relief alleges that Defendant violated two separate provisions of the One Call Law:   (1) Section 9-1.5-103(4)(c)(I), which requires an

---

[10] Indeed, the *Homestake* court expressly framed the issue presented as "whether section 13–80–127 . . . applies when a plaintiff alleges that a contractor negligently operated a sprinkler system but does not allege that the contractor caused a 'defect' in an improvement to real property."   *Homestake*, 817 P.2d at 980.

excavator to use nondestructive means of excavation to identify underground facilities and exercise reasonable care to protect any underground facility in or near the excavation area, and (2) Section 9-1.5-103(8), which requires that a person who performs maintenance take reasonable care when disturbing the soil.  [#1, ¶ 21]  Plaintiffs contend that, pursuant to Section 9-1.5-104.5(2)(d)(I), Defendant thus is liable to them "for any cost or damage incurred by MCI in restoring, repairing, or replacing its Cable, together with reasonable costs and expenses of suit, including reasonable attorney fees."  [*Id.* at ¶ 22]  Section 9-1.5-104.5(2)(d)(I) states in its entirety:

> If any person, other than a homeowner, rancher, or farmer, as defined in section 42-20-108.5, C.R.S., working on such homeowner's, rancher's, or farmer's property, fails to comply with paragraph (a) of this subsection (2) or fails to exercise reasonable care in excavating or performing routine maintenance and damages an underground facility during such excavation or routine maintenance, such person shall be presumably liable for . . . [a]ny cost or damage incurred by the owner or operator in restoring, repairing, or replacing its damaged underground facility, together with reasonable costs and expenses of suit, including reasonable attorney fees.

In the Motion, Defendant contends that Plaintiff's Third Cause of Action is barred by the statute of limitations, because it is a claim for a civil penalty, which must be instituted within one year.  [#35 at 14 (citing Colo. Rev. Stat. § 13-80-103(1)(d) (requiring that "[a]ll actions for any penalty or forfeiture of any penal statutes" be commenced within one year after the action accrues)]  In support, Defendant notes that the Section 9-1.5-104.5 is entitled "Civil penalties—applicability" and thus argues that the legislature's intent that this statute provide a civil penalty is clear.  [*Id.* at 14-15]  Defendant further argues that, even if the legislature's intent were not clear, the test outlined by the Colorado Supreme Court in *Kruse v. McKenna* for determining whether a statutory claim is one for

a civil penalty, also supports application of the one-year statute of limitations.[11]  [#35 at

16-17 (citing 178 P.3d 1198, 1201 (Colo. 2008))].

As Plaintiffs point out in their response, however, Defendant's analysis of Plaintiffs'

Third Claim for Relief focuses on Section 9-1.5-104.5 in its entirety rather than addressing

the specific provision—Section 9-1.5-104.5(2)(d)(I)—invoked by Plaintiffs.  [#42 at 16-17]

For example, Defendant contends that Plaintiffs' "claim for entitlement to attorney's fees

is also clearly, on its face, a penalty" and cites to Section 9-1.5-104.5(3)(b) [#35 at 15],

but the Complaint makes clear that Plaintiffs assert their right to an award of attorney's

fees pursuant to Section 9-1.5-104.5(2)(d)(I) [#1, ¶ 22].  Although certain of the provisions

of Section 9-1.5-104.5 *not* invoked by Plaintiff do expressly provide for a civil penalty,

Section 9-1.5-104.5(2)(d)(I) does not.  *Compare* § 9-1.5-104.5(1)(b) (providing for "a civil

penalty of two hundred dollars"), (c)(II) (providing for a "civil penalty . . . up to seventy-five

thousand dollars") with § 9-1.5-104.5(2)(d)(I) (providing for repair costs, together with

reasonable costs and expenses of suit, including reasonable attorney fees).  "When a

statute is both remedial and penal in nature, the remedial and penal elements are

separated and the appropriate standard is applied to each."  *Front Range Christian

Ministries v. Travelers Indem. Co. of Am.*, No. 16-CV-01923-PAB-CBS, 2017 WL

1148690, at *2 (D. Colo. Mar. 27, 2017) (quoting *Moeller v. Colo. Real Estate Comm'n*,

759 P.2d 697, 701 (Colo. 1988)).

---

[11] Pursuant to the three-part test identified in *Kruse*, the court should consider "whether
(1) the statute asserted a new and distinct cause of action; (2) the claim would allow
recovery without proof of actual damages; and (3) the claim would allow an award in
excess of actual damages."  178 P.3d 1198, 1201 (Colo. 2008), *overruled on other
grounds by Guarantee Tr. Life Ins. Co. v. Estate of Casper*, 418 P.3d 1163, 1168-69
(Colo. 2018).

In its reply, Defendant appears to concede that Section 9-1.5-104.5(2)(d)(I) is not a civil penalty statute,[12] and instead argues that Section 9-1.5-104.5(2)(d)(I) cannot be invoked by Plaintiffs.  Specifically, Defendant emphasizes the following *portion of* the exclusionary clause found in Section 9-1.5-104.5(2)(d)(I) to argue that the provision only applies to homeowners, ranchers, and farmers:  "If any person, other than a homeowner, rancher, or farmer, as defined in section 42-20-108.5, C.R.S., **working on such homeowner's, rancher's, or farmer's property**, . . . fails to exercise reasonable care in excavating or performing routine maintenance and damages an underground facility during such excavation or routine maintenance, such person shall be presumably liable for . . ."  [#43 at 10-11 (emphasis in original)]  By isolating this emphasized language from the remainder of the exclusionary clause, Defendant argues that Section 9-1.5-104.5(2)(d)(I) only applies when an excavator fails to exercise reasonable care while "working on [a] homeowner's, rancher's, or farmer's property."

When Section 9-1.5-104.5(2)(d)(I) is read in its entirety, however, it is clear that the language emphasized by Defendant is part of a larger clause that excludes from liability ". . . a homeowner, rancher, or farmer, as defined in section 42-20-108.5, C.R.S.,

---

[12] Defendant makes no argument that Section 9-1.5-104.5(2)(d)(I) is a civil penalty statute and does not engage in the three-part test it acknowledges applies for determining whether a statutory claim is one for a penalty.  *See supra* note 11.  "[I]t is not the Court's obligation to create legal arguments for [the parties]."  *Zahourek Sys., Inc. v. Balanced Body Univ., LLC*, No. 13-CV-01812-RM-CBS, 2016 WL 1377165, at *13 (D. Colo. Apr. 7, 2016).  To the extent Defendant argues that the title of Section 9-1.5-104.5 alone is dispositive of the legislature's intent, the Court disagrees.  *See Jefferson Cty. Bd. of Equalization v. Gerganoff*, 241 P.3d 932, 936 (Colo. 2010) ("[T]he heading of a statute, although not dispositive of legislative intent, can aid in determining legislative intent.")  As noted above, Section 9-1.5-104.5 includes certain provisions that expressly establish civil penalties and thus account for the title of the statute.  Section 9-1.5-104.5(2)(d)(I), however, does not expressly reference a civil penalty and Defendant has not established that it imposes one.

working on such homeowner's, rancher's, or farmer's property."  Defendant's attempt to divide this exclusionary clause into two separate clauses is not consistent with its plain meaning.  The use of the word "such" to modify homeowner's, rancher's, or farmer's in the second clause makes clear that it is tied to the first clause.  Moreover, Defendant's interpretation would produce nonsensical results. *See Concerned Parents of Pueblo, Inc. v. Gilmore*, 47 P.3d 311, 313 (Colo. 2002) (finding that court "must avoid adopting a forced or strained construction, as well as any construction that leads to an absurd result").  If the first clause—"other than a homeowner, rancher, or farmer"—is read to be independent of the second clause, all homeowners, ranchers, and farmers would be excluded from liability under Section 9-1.5-104.5(2)(d)(I).  Clearly the more logical reading is that homeowners, ranchers, and farmers are excluded from liability only when "working on such homeowner's, rancher's, or farmer's [own] property."

Accordingly, the Court finds that Defendant has not established that Plaintiffs' Third Claim for Relief is a claim for a civil penalty subject to a one-year statute of limitations. Defendant's Motion is DENIED to the extent it seeks summary judgment on Plaintiff's Third Claim for Relief.

## IV.    Conclusion

For the foregoing reasons, **IT IS ORDERED** that:

(1)    Defendant's Request for Judicial Notice [#38] is **DENIED WITHOUT PREJUDICE**;

(2)    Defendant's Motion for Partial Summary Judgment [#35] is **GRANTED IN PART and DENIED IN PART**; and

(3)     Summary Judgment is **GRANTED** in favor of Defendant on Plaintiffs' request for loss of use damages.

DATED:  July 13, 2020                                    BY THE COURT:

                                                         s/Scott T. Varholak_____
                                                         United States Magistrate Judge